**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

**EDWARD E. THIBODEAU,**

    **Plaintiff,**

v.                                  Case No. 8:07-cv-2060-T-27TBM

**MICHAEL J. ASTRUE,
Commissioner of the United States
Social Security Administration,**

    **Defendant.**
_____/

## REPORT AND RECOMMENDATION

The Plaintiff seeks judicial review of the denial of his claim for Social Security disability benefits.[1] Because the decision of the Commissioner of the United States Social Security Administration is in accordance with the correct legal standards and is otherwise supported by substantial evidence, I recommend that it be affirmed.

I.

Plaintiff was fifty-five years of age at the time of his administrative hearing. He has a high school education.[2] His past relevant work was as a reeler (cable spooler), van driver, and carpenter/construction worker (house repairer). Plaintiff applied for disability benefits in

---

[1] This matter comes before the undersigned pursuant to the Standing Order of this court dated August 28, 1987. *See also* M.D. Fla. R. 6.01(c)(21).

[2] In his Disability Report dated May 23, 2003, Plaintiff reported that he earned a GED in 1969. (R. 163).

June 2003, alleging disability as of May 13, 2003, by reason of cirrhosis of the liver, an inability to write, think straight, and remember things; fatigue; and clogged ears. Plaintiff's application was denied originally and on reconsideration.

The Plaintiff, at his request, then received a *de novo* hearing before an Administrative Law Judge ("ALJ"). The Plaintiff was represented at the hearing by counsel and testified in his own behalf. Additionally, a vocational expert was called by the ALJ.

Plaintiff testified that he last worked about four years ago. He was a reeler for a telephone company; he reeled fiber optic cable onto spools. He also worked for CSX railroad. He drove a van and transported the railroad crews. He has done some carpentry and construction work with his father building and remodeling homes. Plaintiff liked that type of work because it gets his mind off things.

Regarding his inability to work, Plaintiff testified to a multitude of physical and mental problems. According to Plaintiff, he suffers from dementia, cirrhosis of the liver, thyroid problems, heart problems, memory difficulties, carpal tunnel syndrome, difficulty sleeping, and neuropathy. His physical problems affect his balance and coordination, and result in pain everywhere. He fractured his foot when he fell from a ladder, and he thinks he needs surgery on his shoulder. Plaintiff testified his left foot [leg] is shorter than his right foot [leg], he trips a lot, and he must be careful on stairs. Plaintiff indicated he tires easily but has difficulty sleeping. As for his cirrhosis of the liver, Plaintiff said he was an alcoholic but he no longer drinks; he quit three and a half years ago when he was hospitalized in March 2003. He takes about fourteen medications a day but does not know what they all are for. Plaintiff also testified that his teeth hurt and are rotten.

Regarding his mental problems, Plaintiff indicated his primary doctor sent him to a psychiatrist or psychologist, but he quit going after two or three visits because he had to drive [far] and all the doctor did was prescribe medication. Plaintiff stated he has memory problems; he forgets what he was going to say because he has so many thoughts. He indicated he would be lost if he did not write notes to himself. Plaintiff indicated further that he has to keep busy to avoid thinking about bad things, such as his father's death. Plaintiff had only recently reconnected with his father when he became sober but then his father died. According to Plaintiff, "the only thing I can't live with is this . . . big old coconut."

Plaintiff lives alone. He does yard work, but he does not do household chores or keep the house clean. He has not done those things since he went into the hospital and his father died. Plaintiff stated he does not like going in the house because it brings back bad memories when he was an alcoholic and fought with his father. Because of that, Plaintiff built a porch on the front of the house. He has a television, fan and hammock on the porch and usually falls asleep there. When he wakes up, he will go inside to use the bathroom and will sleep inside the house if it is hot outside.

Plaintiff's testimony regarding his limitations was somewhat sparse. Plaintiff stated that he could not sit, wears slip on shoes because he cannot tie sneakers or work boots, urinates every two hours, and is forgetful. Additionally, he is tired all the time and naps once a day for a couple of hours. During the day, Plaintiff goes to the "wood place" and a glass manufacturing "place" where he knows people, and he does carpentry work on his house or for others. He also mows the lawn and has done some painting. Plaintiff still drives. (R. 465-88).

Testimony was also obtained from Steven Simon, a vocational expert ("VE"). He classified Plaintiff's past work as a spooler as heavy, semi-skilled work; van driver as medium, semi-skilled work (light work as actually performed by Plaintiff); and house repairer as medium, skilled work (heavy, semi-skilled work as actually performed by Plaintiff). He testified upon a hypothetical which, in addition to Plaintiff's age, education, and work experience, assumed the ability to perform light exertional work. On that hypothetical, the VE indicated that Plaintiff's past work as a van driver, as performed by Plaintiff, would be available. Next, on a hypothetical that assumed a person closely approaching advanced age or an individual of advanced age with a high school education and limited to light exertional work that did not require climbing ladders, ropes or at unprotected heights and no more than occasional climbing, balancing, stooping, kneeling, crouching, or crawling, the expert opined that an individual could perform Plaintiff's job as a van driver as actually performed. If the individual was further restricted by a moderate limitation in concentration, persistence and pace for detailed tasks and was limited to understanding and carrying out only simple, routine, and repetitive instructions, using simple judgement, and able to adapt to only simple changes in the work environment, the VE testified that Plaintiff's past job as a van driver could not be performed. The expert opined, however, that such an individual would be able to perform light, unskilled work such as a cleaner, housekeeping; officer helper; and photocopy machine operator. The expert opined further that none of those jobs would permit the individual to lie down two hours a day during the eight-hour workday. According to the VE, no jobs exist in the national economy that would allow for that restriction.

Upon questioning by Plaintiff's attorney, the VE indicated that an individual would not be able to engage in work activity if he was unable to concentrate, understand, perform simple tasks, or keep up with a routine for four hours out of an eight-hour workday. Counsel questioned the VE about the definition of "moderate," but did not pose specific hypothetical situations. Lastly, counsel asked the VE if an individual could work if he lost the ability to focus or concentrate or stay on task six to ten times per day. The VE responded probably not, but indicated it depended on when it happens and the nature of the work.[3] (R. 488-96).

Also before the ALJ were medical records outlining the Plaintiff's medical history. These matters are addressed adequately by the parties' memoranda and are not set out herein in detail.

By his partially favorable decision of May 25, 2007, the ALJ found that Plaintiff has severe impairments related to cirrhosis of the liver with hepatitis C; mild amnesic disorder with low average intellectual functioning; peripheral neuropathy; bilateral carpal tunnel syndrome; residual post-fracture of the left ankle, degenerative disc disease of the thoracolumbar spine; depression and general anxiety with a personality disorder; and a history of polysubstance abused in reported sustained remission since March 2003. Based on those findings, the ALJ determined that Plaintiff had the residual functional capacity to perform a wide range of light exertional work.[4] Upon this determination, consideration of the

---

[3] At the close of the hearing, the ALJ advised Plaintiff he was going to send Plaintiff for a consultative psychological/psychiatric examination. (R. 496).

[4] The ALJ found that Plaintiff retained the functional capacity to perform light exertional work with the following additional restrictions: (1) occasional limitations in climbing, balancing, stooping, kneeling, crouching or crawling; (2) no climbing of ladders,

grids as a framework for decision and VE testimony, the ALJ concluded that (1) prior to June 13, 2006, the date the claimant's age category changed,[5] there existed a substantial number of jobs in the economy that Plaintiff could perform, thus Plaintiff was not disabled, and (2) beginning on June 13, 2006, the date Plaintiff's age category changed, and by application of the grids, the Plaintiff was determined to be disabled. (R. 29-39). The Appeals Council denied Plaintiff's request for review, and the ALJ's decision became the final decision of the Commissioner.

II.

In order to be entitled to Social Security disability benefits, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment," under the terms of the Act, is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* at § 423(d)(3).

---

ropes or at unprotected heights; (3) moderate limitations in concentration, persistence, and pace for detailed tasks; and (4) the ability to understand and carry out only simple, routine, repetitive instructions; use simple judgment, and perform only simple changes in the work setting. (R. 30).

[5]Section 404.2 provides, in pertinent part, that "[a]n individual attains a given age on the first moment of the day preceding the anniversary of his birth corresponding to such age." 20 C.F.R. § 404.2(c)(4).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See id.* at § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The Commissioner must apply the correct law and demonstrate that he has done so. While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. *Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. *Celebrezze v. O'Brient*, 323 F.2d 989 (5th Cir. 1963). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to re-weigh the evidence, but is limited to determining whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. *Miles*, 84 F.3d at 1400; *Bloodsworth v. Heckler*, 703 F.2d 1233 (11th Cir. 1983).

The ALJ, in part, decided the Plaintiff's claim pursuant to Regulations designed to incorporate vocational factors into the consideration of disability claims. *See* 20 C.F.R.

§§ 404.1501, *et seq*. These Regulations apply in cases where an individual's medical condition is severe enough to prevent them from returning to their former employment, but may not be severe enough to prevent them from engaging in other substantial gainful activity. In such cases, the Regulations direct that an individual's residual functional capacity, age, education and work experience be considered in determining whether the claimant is disabled. These factors are codified in tables of rules that are appended to the Regulations and are commonly referred to as "the grids." *Id.* at Part 404, Subpt. P, App. 2. If an individual's situation coincides with the criteria listed in a rule, that rule directs a conclusion as to whether the individual is disabled. *Id.* at § 404.1569. If an individual's situation varies from the criteria listed in a rule, the rule is not conclusive as to an individual's disability, but is advisory only. *Id.* at § 404.1569a.

The scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988).

III.

The Plaintiff raises a single claim on this appeal. Thus, Plaintiff argues that "[t]he ALJ erred in mechanically applying the age category of the Medical Vocational Guidelines ("grids")." By this argument, Plaintiff challenges the ALJ's reliance on the grids in determining that he was disabled as of the time he attained age fifty-five but not before. According to Plaintiff, "[i]t is difficult to imagine that the Claimant became impaired

overnight, and a proper evaluation should consider dates such as dates of diagnoses and dates of opinions rendered by treating physicians, especially when the [ALJ] relied upon non-exertional impairments to find that the Claimant was disabled." (Doc. 15 at 8). Plaintiff summarily contends that the ALJ's reliance on the grids is in direct contradiction to the decisions rendered in *Wolfe v. Chater*, 86 F.3d 1072 (11th Cir. 1996), and *Chester v. Heckler*, 610 F. Supp. 533 (S.D. Fla. 1985). Thus, Plaintiff urges that this case be reversed or remanded to determine a more appropriate onset date of disability. (Doc. 15 at 3-9).

The Commissioner counters that the ALJ properly relied on the grids (grid rule 202.06) to find Plaintiff disabled as of June 13, 2006, because Plaintiff attained the age of 55 on that date and the pertinent grid rule mandates a conclusion of "disabled" for individuals who are age 55 or older, have a high school education, have no transferable skills, and retain the capacity to perform light exertional work activity. The Commissioner contends that Plaintiff wrongly assumes the ALJ found his impairments disabling as of June 13, 2006, when in fact the ALJ found him disabled when he attained 55 years of age by reason of the grid rules and not because his impairments were suddenly disabling on that date. Thus, Plaintiff's argument fails because the ALJ did not find that his impairments became disabling on the eve of his 55th birthday; the ALJ was required to apply the grids when a grid rule establishes that a claimant is disabled, and the ALJ properly obtained vocational expert testimony for the period of time prior to June 2006 when the grids were used solely as a guide for decision.[6] To

---

[6]The Commissioner correctly notes that, for the period prior to Plaintiff attaining age 55, the ALJ applied grid rules 202.14 and 202.15 as a framework for decision to establish that Plaintiff was not disabled, and relied on vocational expert testimony to establish that Plaintiff could perform other jobs that existed in the national economy and was not disabled. (Doc. 16

9

the extent Plaintiff suggests that the ALJ incorrectly determined the onset date of disability and points to evidence in an attempt to establish such, the Commissioner argues that the onset date determined by the ALJ relied solely on application of the grids and not medical evidence of disability. In any event, the Commissioner contends that Plaintiff's citation to various pages of medical evidence is insufficient to establish an earlier onset date and Plaintiff fails to explain how such evidence demonstrates impairments of disabling severity or limitations different than those found by the ALJ. Finally, the Commissioner contends Plaintiff's reliance on the notes of certain treating doctors does not establish disability because Plaintiff does not challenge the ALJ's consideration of that evidence. (Doc. 16 at 4-10).

A five-step sequential evaluation process is employed for determining whether a claimant is disabled and therefore entitled to benefits. *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997). Here, Plaintiff challenges the ALJ's actions at step five. At this step, the Commissioner must establish that the claimant can perform other work (i.e., work that is not past relevant work) that exists in the national economy. This burden may sometimes be met through exclusive reliance on the grids when each variable (age, education, previous work experience) on the appropriate grid accurately describes the claimant's situation. *See Walker v. Bowen*, 826 F.2d 996, 1003 (11th Cir. 1987). Exclusive reliance on the grids is not appropriate when the claimant is unable to perform a full range of work at a given functional level or when a claimant has nonexertional impairments that significantly limit basic work activities. *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995).

---

at 5, n.3). As the decision reflects, at age 55, grid rule 202.06 became the applicable rule.

However, when a claimant suffers from both exertional and nonexertional impairments, the ALJ must first consult the grids to determine whether a finding of disability can be based on the exertional impairments alone. 20 C.F.R. Part 404, Subpt. P, App. 2, § 200.00(e)(2). To this end, the regulations state:

> . . . where an individual has an impairment or combination of impairments resulting in both strength limitations and nonexertional limitations, the rules in this subpart are considered in determining first whether a finding of disabled may be possible based on the strength limitations alone and, if not, the rule(s) reflecting the individual's maximum residual strength capabilities, age, education, and work experience provide a framework for consideration of how much the individual's work capability is further diminished in terms of any types of jobs that would be contraindicated by the nonexertional limitations.

20 C.F.R. Part 404, Subpt. P, App. 2, § 200.00(e)(2); *see Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985); 20 C.F.R. § 404.1569a(d); SSR 83-14, 1983 WL 31254, *3 (S.S.A.). If the claimant is found disabled at this point, no further inquiry need be made. *See* 20 C.F.R. § 404.1520(a)(4).

Upon consideration, I conclude that the ALJ properly utilized the grids at step five to find Plaintiff disabled as of June 13, 2006, and obtained and relied upon vocational expert testimony for the time period prior to that date. Here, during the adjudicatory period, Plaintiff's age, as defined in the grids, ranged from closing approaching advanced age, i.e, age 51 at the alleged onset date, to advanced age, i.e., age 55 at the administrative hearing.[7]

---

[7]The Plaintiff was born on June 14, 1951. (R. 86). As indicated by the Commissioner, the regulations provide that "an individual attains a given age on the first moment of the day preceding the anniversary of his birth corresponding to such age." 20 C.F.R. § 404.2(c)(4). For this reason, the ALJ concluded that Plaintiff attained age 55 on June 13, 2006, and was

11

*See* 20 C.F.R. § 404.1563(c)-(e) (defining age categories). Utilizing grid rules 202.14 and 202.15 as a framework, a person with Plaintiff's residual functional capacity (for a wide range of light work), education and work experience is <u>not</u> considered disabled, regardless of transferability of skills, if he is "closely approaching advanced age" (50-54 years old). The ALJ in this case correctly found so, and obtained vocational expert testimony in light of Plaintiff's nonexertional limitations for that period of time, i.e., from Plaintiff's alleged onset date of disability of March 13, 2003, through June 13, 2006. However, upon obtaining "advanced age" (55 and older) as of June 13, 2006, and the finding of no transferability of skills,[8] the ALJ correctly applied grid rule 202.06 to find Plaintiff disabled as of June 13, 2006. This result is mandated by the regulations. *See* 20 C.F.R. Part 404, Subpt. P, App. 2, § 200.00(e)(2). Plaintiff's urging to the contrary ignores this.

Plaintiff's reliance on *Chester* and *Wolfe* is misplaced. Neither case addressed the circumstances at issue here, namely, an ALJ's use of the grids as a framework to determine whether a claimant, who has exertional and nonexertional impairments, may be considered disabled based solely on the exertional impairments. Plaintiff cites *Chester* for the proposition that an ALJ may not mechanically apply the age criteria of the grids. I do not

---

therefore disabled as of that date.

[8]Here, the ALJ found that beginning on June 13, 2006, Plaintiff's job-specific skills at the medium and heavy exertional past jobs of cable reeling and driving were not transferable to other sedentary and light exertional jobs. (R. 38). Under the regulations, transferability of skills to light work for individuals of advanced age who are closely approaching retirement age (60-64), will be found only where there is little, if any, vocational adjustment required in terms of tools, work processes, work settings, or in the industry. *See* 20 C.F.R. Part 404, Subpt. P, App. 2, § 202.00(f).

disagree with this general proposition. The regulations provide that the age categories will not be mechanically applied in a borderline situation. *See* 20 C.F.R. § 404.1563(b). A borderline situation exists where a claimant is within a few days to a few months of reaching an older age category, and using the older age category would result in a determination or decision that the claimant is disabled. *See id*. Plaintiff's case is not borderline. *Cf. Chester*, 610 F. Supp. at 534-35. Furthermore, Plaintiff does not contend that it is. Here, as noted above, during the adjudicated period, Plaintiff's age ranged from closely approaching advanced age at his alleged onset date to advanced age when he turned fifty-five. With regards to *Wolfe*, the court in that case simply recognized the rule that the grids may be used in place of vocational testimony where none of a claimant's nonexertional impairments are so severe as to prevent a full range of employment at a designated exertional level. *See Wolfe*, 86 F.3d at 1077. There, the ALJ used the grids in lieu of vocational testimony because he found no credible evidence of nonexertional limitations, and the Eleventh Circuit upheld his decision to do so. *Wolfe*, 86 F.3d at 1078. Contrary to Plaintiff's summary urging, the holding in that case does not lend support to the instant facts. Here, the ALJ used the grids as a framework for decision making and obtained the testimony of a VE. Thus, the ALJ here abided by the rule recognized in *Wolfe* and utilized vocational expert testimony for the adjudicatory period prior to Plaintiff reaching age fifty-five. There is no error in the ALJ's use of the grids in this case.

IV.

For the foregoing reasons, the decision of the Commissioner of the United States Social Security Administration is in accordance with the correct legal standards and is otherwise supported by substantial evidence, and I recommend that it be affirmed. I further recommend that the Clerk be directed to enter Judgment in favor of the Defendant and to close the case.

> Respectfully submitted this
> 11th day of February 2009.
>
> THOMAS B. McCOUN III
> UNITED STATES MAGISTRATE JUDGE

**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings and recommendations contained in this report within ten days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal and a *de novo* determination by a district judge. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; M.D. Fla. R. 6.02; *see also* Fed. R. Civ. P. 6; M.D. Fla. R. 4.20.

Copies furnished to:
The Honorable James D. Whittemore, United States District Judge
Counsel of Record